

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

March 26, 1964

Authorities Cion-360
where conflicts

Mr. J. N. Nutt
Commissioner of Insurance
State Board of Insurance
Capitol Station
Austin, Texas

Opinion No. C-231

Re: Must an existing life in-
surance company have on
hand aggregate capital and
surplus of at least $250,-
000 before it can amend
its charter to provide ad-
ditional no par shares.

Dear Mr. Nutt:

You have requested our opinion on the following ques-
tion:

> "Is a life insurance company which is au-
> thorized to issue stock without nominal or
> par value required to have on hand aggregate
> capital and surplus of at least $250,000 be-
> fore it can amend its charter to provide addi-
> tional no par shares?"

In your letter you state that before approving a char-
ter amendment to provide additional no par shares it has been
the policy of the State Board of Insurance to require a state-
ment of the company, under oath, that at least 50% of the au-
thorized shares have been subscribed and fully paid for, and
that not less than $250,000 has been received for such issued
shares,

> " . . . but it has never been the policy of the
> Department to require evidence that not less
> than $250,000 (aggregate capital and surplus) is
> in the possession of the company at the time of
> such amendment."

You indicate that this question has arisen by virtue of some of the language of the Attorney General's Opinion No. WW-360 (1958) which could be construed as holding that Article 3.02a of the Insurance Code requires $250,000 to be in the possession of the company at the time of such amendment.

The applicable part of Article 3.02a of the Insurance Code provides:

> ". . . At the time of filing of an original charter or any amendment of an existing charter authorizing the issuance of stock with no par value the company shall file a statement under oath with the State Board of Insurance setting forth the number of shares without par value subscribed and the actual consideration received by the company for such shares. Provided, however, that the stockholders of any such company authorizing the issuance of its stock without nominal or par value, shall be required in good faith to subscribe and pay for at least fifty per cent (50%) of the authorized shares to be issued without nominal or par value, before said corporation shall be chartered or have its charter amended so as to authorize the issuance of shares without nominal or par value; and provided further, that <u>in no event shall the amount so paid be less than Two Hundred Fifty Thousand Dollars ($250,000)</u> . . ."
> (Emphasis added.)

In Attorney General's Opinion No. WW-360 the question of the requirements as to minimum capital, minimum surplus and the minimum aggregate of capital and surplus of a life insurance company issuing no par value stock was presented. This Opinion did not have before it the specific question presented herein, and any statement concerning the capital, surplus and aggregate capital and surplus requirements before there can be a charter amendment to provide additional shares was dictum, and not controlling in the answer to this request.

Article 3.02a provides that the amount paid for a company's shares shall not be less than $250,000. However, Article 3.02a has no application to the continuing financial structure of the company in relation to the minimum capital and minimum surplus which must be maintained by the company. See for example Section 5 of Article 3.02 of the Insurance Code wherein the minimum capital and minimum surplus requirements <u>at the time of incorporation</u> are set forth, and then provides only that:

" . . . such minimum capital shall at all times be maintained . . ."

Similarly Article 3.39E(1) of the Insurance Code provides:

" . . . <u>and the minimum capital of a company</u> <u>hereafter organized under said Article 3.02</u> and the minimum free surplus of a company hereafter organized under said Article 11.01 <u>at all times shall be maintained</u> in cash or in the same classes of investments . . ."

This apparently places the requirement of the maintenance of surplus only on those <u>mutual</u> life insurance companies organized under Chapter 11, and restates the requirement that minimum capital only be maintained at all times by insurance companies under Chapter 3.

The Insurance Code has been carefully searched for any intent that such aggregate minimum capital and surplus be maintained at all times, or in the alternative, that such must be on hand as a prerequisite to the amendment of its charter to provide for additional shares. No such intention is found and there appears to be no valid reason for placing this heavy a burden on no par life insurance companies. It is also observed that instead of providing any additional safeguards this purported onerous requirement could well have the very opposite effect.

Mr. J. N. Nutt, page 4 (C-231)

It is, therefore, concluded that your departmental construction is correct, that it is not necessary for the company to have on hand an aggregate of $250,000 in their capital and surplus at the time of such amendment, and that to the extent that the prior Opinion WW-360 is in conflict, it is expressly overruled.

## SUMMARY

An existing life insurance company authorized to issue no par stock is not required to have on hand aggregate capital and surplus of at least $250,000 before it can amend its charter to provide additional no par shares.

Respectfully submitted,

WAGGONER CARR
Attorney General of Texas

By _Paul Phy_

PAUL PHY
Assistant Attorney General

PP:da:s

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Joe Long
John Reeves
W. O. Shultz
Robert Smith

APPROVED FOR THE ATTORNEY GENERAL
By: H. Grady Chandler